IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION

| | |
|---|---|
| WILMINA SHIPPING AS, § <br> As owner of the M/T WILMINA, and, § <br> the M/T WILMINA *in rem*, § <br> Petitioners, § <br> § <br> vs. § <br> § NO. 2:10-cv-_____ <br> UNITED STATES OF AMERICA, § <br> UNITED STATES COAST GUARD, and, § <br> UNITED STATES CUSTOMS AND § <br> BORDER PROTECTION AGENCY, § <br> Respondents. § | |

### PETITION TO FIX SECURITY FOR RELEASE OF THE MOTOR TANKER WILMINA AND REQUEST FOR AN EXPEDITED HEARING ON THE MOTION

COMES NOW, through undersigned counsel and pursuant to Supplemental Rule for Certain Admiralty and Maritime Claims, Rule E(8), Specially Appearing Petitioners, WILMINA SHIPPING AS, Owner of the M/T WILMINA, (hereinafter "Owner"), and the M/T WILMINA, *in rem,* to Petition this Honorable Court to fix security for the release of the M/T WILMINA (hereinafter "Vessel"), which was detained on May 5, 2010 and remains detained at Corpus Christi, Texas.  It is respectfully submitted that the Court is required to fix security for release of the Vessel as the Respondents have arbitrarily and capriciously refused to accept a bond or other surety in accordance with the clear statutory requirements of 33 U.S.C. § 1908(e), and, as a result, the detention of the Vessel has caused and will continue to cause the Petitioners to suffer substantial economic harm.

## JURISDICTION AND VENUE

1.  The Court has subject matter jurisdiction as Petitioners set forth an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is based in admiralty pursuant to 28 U.S.C. § 1333 and Supplement Rules for Certain Admiralty and Maritime Claims, Rules C and E.  In addition, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1346, as the United States of America is named as a Respondent.

2.  Venue is proper pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1402, as the United States is named as a Respondent; the Vessel is currently within the Corpus Christi Division of the United States District Court for the Southern District of Texas; the Vessel is being detained within this District by the Captain of the Port, Corpus Christi; and, the Office of the United States Attorney for the Southern District of Texas, Corpus Christi Division, is in charge of the investigation relating to a possible record keeping violation under 33 U.S.C. § 1901, *et. seq.* (hereafter "The Act to Prevent Pollution from Ships" or "APPS").[1]

## THE VESSEL

3.  The M/T WILMINA is an ocean going motorized tank vessel built in 1997. *See* Furulund Declaration, at ¶ 2. The Vessel is owned by Wilmina Shipping AS a foreign company, with offices at Beddingen 8, 0250 Olso, P.O. Box 1583, Vika, 0118 Oslo, Norway. *See id.* at ¶ 3. The Vessel is managed by Wilhelmsen Marine Services AS, a foreign company, with a principal place of business at Beddingen 8, 0250 Olso, P.O. Box 1583, Vika, 0118 Oslo, Norway. *See id.*

---

[1] APPS adopts as U.S. law the provisions of the International Convention for the Prevention of Pollution from Ships (hereinafter "MARPOL").  The MARPOL Protocol, more formally known as the Protocol of 1978 relating to the International Convention for the Prevention of Pollution from Ships, is a treaty to which the United States is a party. Its' provisions are codified as U.S. law at 33 USC 1901, *et. seq.*; *see also United States of America v. Royal Caribbean Cruises Ltd.*, 11 F. Supp. 2d 1358, 1368 (S.D.Fl. 1998).

2

at ¶ 4. The Vessel is registered in Norway and operates pursuant to the laws and authority of Norway. *See id.* at ¶ 5. The Vessel's classification society is Det Norske Veritas. *See id.* at ¶ 6.

## THE DETENTION OF THE VESSEL

4. On May 4, 2010, the Vessel arrived at Public Oil Dock No. 1 in Corpus Christi, Texas (hereinafter "the terminal"). *See* Furulund Declaration, at ¶ 7.

5. On May 4, 2010, a team of Coast Guard personnel boarded the M/T WILMINA to conduct a Port States Control inspection, a Certificate of Compliance inspection, and thereafter they generated a Port State Control Inspection report. *See* McCarthy Declaration, Exhibit A.

6. On May 4, 2010, a Certificate of Compliance was also issued by the Coast Guard which stated, "**the ship [M/T WILMINA] has been examined and found to be in compliance with all applicable U.S. and international marine safety and environmental protection standards.**" *See* McCarthy Declaration, Exhibit B.

7. After the initial boarding of the M/T WILMINA, additional Coast Guard personnel boarded the vessel on May 4 – 5, 2010, and a second Port State Control Report was generated. *See* McCarthy Declaration, Exhibit C.

8. Following this inspection, the Coast Guard in its inspection report alleged the vessel had a number of deficiencies. The report stated in part: "After observing inconsistent entries[2] in the oil record book and receiving information on a MARPOL violation from the crew[3], PSCO's expanded scope of engine room examination, allegedly determined that the oily

---

2 It must be noted the Coast Guard has yet to identify a single "inconsistent entry" in the vessel's oil record book, or provide any factual support for the allegation that MARPOL/APPS has been violated. In spite of this fact, the vessel remains detained in Corpus Christi, Texas.
3 This statement is misleading and inaccurate. Based on interviews conducted by the Coast Guard on the vessel, only two crewmembers have alleged a "MARPOL violation" occurred on board the M/T WILMINA. Specifically, Motorman Cesar Cruz and Fitter Robert Pabillar informed the Coast Guard that a MARPOL violation occurred when the vessel allegedly discharged waste through a flexible hose that was utilized to bypass the vessel's Oily

3

water separator equipment is inoperable[4], discharge piping leading through the hull from Oily Water Separator was removed, thick oily sludge discovered on inside of discharge piping, valves, and skin valve. Oily water by-pass hose and flanges found in chemical locker with oily sludge inside the hose."[5] *See* McCarthy Declaration, Exhibit C.

9. From May 4 through May 6, 2010, the Coast Guard seized documents, log books, original vessel certificates (which are property of the vessel's flag state, Norway), and other materials from the M/T WILMINA. *See* McCarthy Declaration, Exhibit D.

10. On May 5, 2010, Captain Paulison, United States Coast Guard, Captain of the Port – Corpus Christi, issued a letter which stated the Vessel had been detained by the United States Customs and Border Protection (hereinafter "CBP") agency and that the Vessel's departure clearance had been withheld by CBP as of May 5, 2010. *See* McCarthy Declaration, Exhibit E.

11. As set forth in the May 5th letter, the Coast Guard detained the Vessel by requesting CBP withhold her customs clearance as, "the U.S. Coast Guard determined that there was reasonable cause to believe the M/T WILMINA, IMO Number 9151840, its owner,

---

Water Separator (hereinafter "OWS"). However, it must be noted that Fitter Pabillar had been terminated well in advance of this alleged discharge and he has made statements to the Coast Guard that because he was terminated he wanted to "get even with the Company". Additionally, the other members of the M/T WILMINA's crew have all stated that they never observed an improper discharge of waste and the pollution control equipment was functioning properly.

4 The OWS was operable when tested by the Coast Guard on May 4, 2010. Only after the oil content meter (hereinafter "OCM") of the OWS was removed at the Coast Guard's request, placed in the Coast Guard's sole custody for a number of hours, and later reinstalled on the OWS would the OWS no longer function. Once a technician reattached the OCM wires properly, the OCM functioned properly. In fact, the Coast Guard performed an additional three (3) OCM tests to ensure the OCM was functioning properly. Thereafter, the OCM was, without explanation or basis, seized by the Coast Guard and removed from the vessel. This was a blatant maneuver by the Coast Guard to disable the vessel as a pretext to detaining it knowing that the OCM was properly functioning, while at the same time requiring the vessel's Owner to bear the substantial costs of purchasing a new OCM and installing the same. This is just one example of the Coast Guard's arbitrary and capricious conduct in this matter.

5 *See* McCarthy Declaration, Exhibit C, Port State Control Report, dated May 6, 2010.

operator, or person in charge may be subject to a fine or civil penalty pursuant to the Act to Prevent Pollution from Ships, 33 U.S.C. § 1901 *et seq.*" *See* McCarthy Declaration, Exhibit E.

12.     The May 5th letter did not specify what amount of bond or cash security was required to be posted by the Vessel's owner to have the customs hold released. *See* McCarthy Declaration, Exhibit E. The letter stated, "when surety satisfactory has been provided to this office, we will request that CBP grant departure clearance for the M/T WILMINA." *Id.*

### Security Proposal Negotiations

13.     On May 7, 2010, USCG Lt. Demetrius Cheeks, Eighth Coast Guard District Legal Office, submitted the Coast Guard's security proposal that the Owner and Manager of the vessel would be required to execute in order to obtain the release the Customs hold on the M/T WILMINA. *See* McCarthy Declaration, Exhibit F.

14.     For the first time, the Coast Guard alleged in the security proposal that the M/T WILMINA and its crew violated the Act to Prevent Pollution from Ships and the Port and Waterways Safety Act. *See* McCarthy Declaration, Exhibit F. There was no mention of the alleged Port and Waterways Safety Act violation in the original detention letter of May 5, 2010[6]. *See* McCarthy Declaration, Exhibit E.

15.     Under terms of the Coast Guard's security proposal, the government's criminal or civil penalties claims attach to the Vessel's posted surety pursuant to Rule E(5) of the Supplemental Rules for Admiralty or Maritime Claims. *See* McCarthy Declaration, Exhibit F.

16.     The Coast Guard's security proposal would require the Owner and Manager of the M/T WILMINA agree to the following terms before the Coast Guard would instruct CBP to

---

6 It is submitted that the additional charge relating to an alleged Port and Waterways Act violation was an after the fact, bad faith, attempt by the Coast Guard to enhance the potential alleged violations in order to demand a higher surety amount.

release the Vessel: (1) post a $1,500,000 surety bond; (2) require the detention of twelve (12) members[7] of the vessel's twenty-five (25) person crew in the Southern District of Texas for an <u>unspecified and unlimited time</u> period[8]; (3) require the Owner and Manager pay the total wages, lodging costs, transportation costs, medical care costs and a fifty dollar ($50) per diem for each of the twelve (12) crewmembers detained for an unlimited period of time in the District; (4) require the Owner and Manager encourage the twelve (12) crewmembers, the majority of whom are currently represented by individual criminal defense counsel and some of whom are subjects and/or targets of the ongoing criminal investigation, to cooperate with the government; (5) keep the M/V WILMINA at Corpus Christi, Texas until each of twelve (12) crewmembers the government is requesting be detained are granted parole into the United States by U.S. Immigration; (6) agree to maintain (i.e., pay the total wages, lodging costs, transportation costs, medical care costs and seventy dollar per diem), for an unlimited period of time, any other officers and crewmembers of the vessel who have been or may be served with federal grand jury, deposition or trial subpoenas or material witness warrants; (7) require the Owner and Manager of the vessel to stipulate to the authenticity of documents and things seized from the vessel by the United States or produced by the Owner and Manager; (8) require the Owner and Manager to "facilitate and assist the United States in effecting service of federal grand jury, deposition and/or trial subpoenas" on employees of the Owner and Manager who are not United States citizens and not in the United States at the time the subpoenas are issued; (9) require the Owner

---

7 The twelve (12) crewmembers include: (1) Master Pawel Juzwin; (2) Chief Engineer Ryszard Falinski; (3) First Assistant Engineer Waldemar Kaluzinski; (4) Second Assistant Engineer Mariusz Dolega; (5) Electrician Andrzej Pior; (6) Motorman Chester Paragran; (7) Motorman Cesar Cruz; (8) Pumpman Andrzej Makson; (9) Fitter Cezary Bogacki; (10) Fitter Janusz Szachta; (11) Fitter Robert Pabillar; and, (12) Wiper German Estrara. *See* McCarthy Declaration, Exhibit F at ¶ 2.

8 This is a relatively new requirement which has only recently begun cropping up in security proposals. It is believed that this is the first challenge to this egregious condition for the release of the vessel under 33 USC §1908(e).

and Manager to designate an agent for service of process in the United States; and, (10) require the Owner and Manager waive their Sixth Amendment Confrontation Clause rights at trial. *See* McCarthy Declaration, Exhibit F.[9]

17. On May 7, 2010, counsel for the Owner and Manager of the M/T WILMINA, in an effort to obtain the immediate release of the vessel from detention submitted a security counter-proposal to the Coast Guard[10]. *See* McCarthy Declaration, Exhibit G. The counter-proposal, submitted in good faith, included the following key terms: (1) the Owner and Manager of the vessel would post surety bond in a total amount of $500,000 to obtain release of the vessel; (2) it provided that six (6)[11] crewmembers of the M/V WILMINA could be detained in the United States for a maximum of ninety (90) days; and, (3) it required the Owner and Manager pay the total wages, lodging costs, medical care costs that were required to be paid in accordance with the crewmembers' employment contracts, and a thirty dollar ($30) per diem for the six (6) crewmembers detained in the District for a maximum of ninety (90) days. *See id.*

18. Since submitting the security counter-proposal on May 7, 2010, counsel for the Owner and Manager of the M/T WILMINA made numerous telephone calls and sent numerous

---

9 There is absolutely no authority in 33 U.S.C. 1908(e) or any other statute that gives the Coast Guard or any other federal agency the right to make these kinds of demands as pre-judgment surety conditions. The mere fact that the Coast Guard is making such demands is an exercise in overreaching, and a capricious and arbitrary abuse of the statute. The statute states, in relevant part, "If any ship subject to the MARPOL Protocol, . . . or this chapter, its owner, operator, or person in charge is liable for a fine or civil penalty under this section, or if reasonable cause exists to believe that the ship, its owner, operator, or person in charge may be subject to a fine or civil penalty under this section, the Secretary of the Treasury, upon the request of the Secretary, shall refuse or revoke the clearance required by section 60105 of title 46. Clearance may be granted upon the filing of a bond or other surety satisfactory to the Secretary." 33 U.S.C. § 1908(e).

10 The counter proposal was made in order to obtain the immediate release of the vessel and avoid unnecessary additional expenses and delay to the vessel's itinerary. Counsel for Owner and Manager has consistently taken the position with the Coast Guard Legal offices around the country and with Coast Guard Washington headquarters that 33 USC §1908(e) does not authorize the Coast guard to demand anything more that a surety bond for the release of the vessel.

11 The six (6) crewmembers include: (1) Chief Engineer Ryszard Falinski; (2) First Assistant Engineer Waldemar Kaluzinski; (3) Second Assistant Engineer Mariusz Dolega; (4) Motorman Chester Paragran; (5) Motorman Cesar Cruz; and, (6) Fitter Cezary Bogacki. *See* McCarthy Declaration, Exhibit G.

emails to the Coast Guard officer placed in charge of negotiating the security proposal, all of which had gone virtually unanswered.  *See* McCarthy Declaration, at ¶ 7 - 13.

19.     From May 7, 2010 to May 13, 2010, Lt. Cheeks has made one telephone call, but has otherwise failed to engage in substantive discussions concerning the release of the M/T WILMINA. *See* McCarthy Declaration, at ¶ 7 - 13.

20.     Due the Coast Guard's repeated failures between May 8, 2010 and May 13, 2010 to abide by it promises to substantively discuss the security proposals, on the afternoon of May 13, 2010, counsel for the Owner and Manager of the Vessel notified the Coast Guard that it intended to file the instant application, as the Coast Guard was acting in an unreasonable, arbitrary and capricious manner in refusing to engage in good faith discussions on the surety issue and in delaying the release of the M/T WILMINA without cause or justification. *See* McCarthy Declaration, Exhibit M.

21.     Previously, on May 11, 2010, Lt. Cheeks in the one return call that he did make in response to the repeated calls from counsel stated that the May 7, 2010 security proposal would need to be substantially revised, as he had yet to develop facts or information to support the $1,500,000 surety bond demand or the detention of twelve (12) crewmembers in the United States.  *See* McCarthy Declaration, ¶ 12.

22.     On the evening of May 13, 2010, the Coast Guard submitted a "final" Security Agreement proposal under cover of a take it or leave it e-mail.  *See* McCarthy Declaration, Exhibit N. In a glaring example of bad faith, the May 13, 2010 "final" Security Agreement was nearly identical to the Coast Guard's security proposal, dated May 7, 2010. *See* McCarthy Declaration, Exhibit F *compare* Exhibit N. The only substantive difference was a new, more restrictive, requirement that the twelve (12) detained crewmembers remain in the City of Corpus

Christi, instead of the Southern District of Texas, as originally proposed by the Coast Guard. *See* McCarthy Declaration, Exhibit N.

23.     The Coast Guard's May 13th e-mail provided no explanation or justification for the six (6) day delay in responding to the security counter-proposal that was sent on May 7, 2010. *See id.* Instead, it is clear that the purposeful stalling tactic employed by the Coast Guard was calculated to unreasonably and unjustifiably increase the Petitioners' costs and economically coerce them to accept a surety proposal that the government knows it is not entitled to under the applicable statute.

## 33 U.S.C. § 1908(e) Requires the Release of Vessel Upon Posting of Bond or Other Equivalent Cash Security

24.     When a vessel's Customs Clearance is withheld during the course of an investigation of a violation of the Act to Prevent Pollution from Ships (APPS), 33 U.S.C. § 1908(e) requires CBP to grant the vessel Customs Clearance upon the posting of a bond or other equivalent cash security by the Vessel's owner. *See* 33 U.S.C. § 1908(e).

25.     33 U.S.C. § 1908(e)'s utilization of the phrase "other surety satisfactory to the Secretary," does not empower the Coast Guard to require the Petitioners to execute a security proposal containing onerous and statutorily unauthorized terms and conditions in order to obtain Customs Clearance of its detained vessel.

26.     There is no U.S. statute, C.F.R. section or case law that permits the government to demand pre-judgment surety from a corporation that includes *inter alia* that it: (1) detain foreign citizens in the United States for an unlimited period of time, bearing all costs for such detentions; (2) serve subpoenas on foreign citizens that are beyond the jurisdiction of the Court and Grand

Jury; and, (3) facilitate the introduction of evidence against the corporation at a future criminal trial, in return for releasing property that is owned by the corporation.

## Impact of the Vessel's Detention

27.     The continued detention of the Vessel in Corpus Christi, Texas by the Respondents has caused and continues to cause punitive economic harm to the Vessel's Owner. *See* Furulund Declaration at ¶ 9 - 13. As the Vessel has been detained, it has been unable to complete a scheduled voyage which it was contractually obligated to undertake, and which would have required the Vessel to a load port on the East Coast of Mexico and discharge this cargo of crude oil in Spain. *See id.* at ¶ 9 -10. The Vessel was obligated to perform this voyage in accordance with the terms of a charter party it previously entered into with the Vessel's charterer. *See id.*  The total revenue that would have been generated for the voyage from Mexico to Spain is $809,912. *See id.*

28.     Since first being detained in Corpus Christi on May 5, 2010, the vessel's owner has paid $242,054 to cover expenses, including but not limited to, maintaining the vessel at Public Oil Dock #1, the shifting of the vessel to Texas Dock and Rail facility, maintaining the vessel at the Texas Dock and Rail facility, paying crewmember wages, replace log books and equipment seized by the Coast Guard, having technicians to attend the vessel and maintaining Fitter Pabillar and Motorman Cruz at a hotel in Corpus Christi in accordance with a request made by the Coast Guard on May 5, 2010. *See* Furulund Declaration, at ¶ 11. In addition to these $242,054 in expenses, the Owner of the M/V WILMINA will continue to incurred the following expenses on a daily basis: (1) Crew Wages - $3,808/per day; (2) Fuel for Auxiliary Engine and Boiler - $5,086/per day; (3) Dockage Fees - $8,722/per day; (4) Lubricating Oil - $54/per day; (5) Food of Crew - $257/per day; (6) Pabillar and Cruz hotel costs - $125/per day, and (7) Cost to Maintain Replacement Crew - $1400. *See id.* The daily expenses being incurred while the

10

vessel has been detained in Corpus Christi, Texas are $19,451 per day, and these expenses continue to be incurred while the vessel is detained. *See id.*

29.     Petitioners have also lost the sum of $38,200 in freight revenue each day the vessel is detained, and will continue to lose such revenue profit at the rate of $30,200 per day until the vessel is permitted to depart Corpus Christi and undertake another revenue generating voyage. *See* Furulund Declaration, at ¶ 12.

## **Petitioners have an Absolute Right to Port a Bond or Other Equivalent Cash Security to Release the M/T WILMINA from the Current Customs Hold**

30.     It is respectfully submitted that the Court has the authority and should hear this matter on an expedited basis, as the Coast Guard's detainment of the M/T WILMINA has caused substantial harm to the Petitioners, is an unjustifiable restraint of trade, and an egregious abuse of the applicable statute. Local Rule 7.8 authorizes the Court to hear this matter on an expedited basis.

31.     The ongoing detention of the M/T WILMINA has caused substantial harm to the Petitioners as the detention has: (1) denied the Owner of the M/T WILMINA the free use and enjoyment of its property; (2) precluded the Vessel from undertaking a voyage from Mexico to Spain which the Petitioners were contractually obligated to perform ; (3) caused the Vessel's Owner to incur costs in excess of $$242,054 since the Vessel was first detained on May 5, 2010; (4) required, and will continue the Vessel Owner's to incur costs in excess of $19,451 a day while the Vessel remains detained in Corpus Christi, Texas; and, (5) caused loss of revenue in the amount of $38,200 and continues to lose a profit at the rate of $30,200 per day.

32.     It is respectfully submitted that he Court has the authority to fix security for release of the Vessel, as the Respondents, without good cause and/or explanation, have

11

arbitrarily and capriciously refused to discuss and/or accept a bond or other cash surety in accordance with the clear statutory requirements of 33 U.S.C. § 1908(e).

33    The Coast Guard has and continues to demand a security proposal with terms that are manifestly contrary to the requirements of 33 U.S.C. § 1908(e) and outside the scope of any statutory or legal authority, including, but not limited to, demanding the Owner and Manager of the M/T WILMINA maintain twelve (12) foreign nationals in the City of Corpus Christi for an unlimited period of time while the government conducts an investigation of alleged violation of the 33 U.S.C. 1908(a).[12]

34.    As the Coast Guard's security proposal contains a number of provisions that simply have no basis in law and completely disregard the requirements of 33 U.S.C. § 1908(e), the Court is required to intervene, as it cannot defer to a government agency that is acting in an clearly arbitrary and capricious manner.

35.    The Court has the authority to fix the amount of security. Supplement Rule E(5) requires the Court to fix the amount of a bond or other equivalent cash security in order to ensure a Vessel Owner can obtain the release of its vessel from detainment and avoid any further economic harm.

36.    It is respectfully submitted the Court enter an Order to fix the amount of security for release of the Vessel in order to ensure the Petitioners' due process rights are protected and

---

12 The additional statutorily unauthorized requirements of Coast Guard's security proposals include, but are not limited to : (1) the purposefully attempt to waive and interfere with various fundamental constitutional rights, freedoms and civil liberties, and personal protections afforded to the vessel's crew; (2) requiring the Petitioners stipulate to the authenticity of documents and things seized from the vessel by the United States or produced by the Owner and Manager; (3) requiring the Owner and Manager of the vessel waive their Sixth Amendment Confrontation Rights; and, (4) requiring the Petitioners "facilitate and assist the United States in effecting service of federal grand jury, deposition and/or trial subpoenas" on employees of the Owner and Manager who are not United States citizens and not in the United States at the time the subpoenas are issued.  Such preconditions are clearly not envisioned or otherwise authorized by 33 U.S.C. § 1908(e), which speaks only and exclusively of a bond or other surety.

the continuation of the harm being suffered is abated, as the Coast Guard has already imposed and continues to impose an egregious pre-judgment penalty on the Petitioners based on a self-serving and conclusory allegation of misconduct that has not been the subject of any form of judicial review. This is a blatant attempt by the Coast Guard to utilize economic coercion and transparent delay tactics to impose the terms of a security proposal on the Petitioners that violates the requirements of 33 U.S.C. § 1908(e) and every other applicable statute, and/or to force the Petitioners to cease operations.

**WHEREFORE**, Specially Appearing Petitioners respectfully request that this Honorable Court grant its Petition for Entry of an Order to Fix Security for Release of the M/T WILMINA, and a bond or other equivalent cash security in the amount of $500,000 be fixed be the Court so that the Vessel be granted Customs clearance in accordance with the requirements of 33 U.S.C. § 1908(e). Petitioner respectfully requests an immediate hearing, within three days hereof, and for all other further and equitable relief that the Court deems just and proper under the circumstances.

Respectfully submitted,

CHALOS, O'CONNOR & DUFFY

By: ___s/ Brian T. McCarthy_____
    Michael G. Chalos
    S.D. Texas Federal Bar No. 2304888
    Brian T. McCarthy
    S.D. Texas Federal Bar No. 918003
    366 Main Street
    Port Washington, NY  11050
    (516) 767-3600 – Telephone
    (516) 767-3605 – Telefax

    **ATTORNEYS-IN-CHARGE FOR PETITIONERS**

OF COUNSEL:
WELDER LESHIN LLP
Frank L. McNiff, Jr.
Texas Bar No. 13839020
Federal Bar No. 12595
Dabney Pettus
Texas Bar No. 24033443
Federal Bar No. 29959
Dane C. Bruun
Texas Bar No. 24059506
Federal Bar No. 876534
800 North Shoreline Blvd.
Suite 300, North Tower
Corpus Christi, Texas  78401
(361) 561-8000 – Telephone
(361) 561-8001 – Telefax

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing pleading has been forwarded to the following attorneys of record by electronic mail, telefax, First Class Mail, by hand or electronic filing, on this the 14th day of May, 2010.

**United States Coast Guard**
LT Demetrius Cheeks
USCG Eighth District Legal
500 Poydras St., Ste 1311
New Orleans, LA 70130-3319
Tel: (504) 671-2034
Fax: (504) 671- 2040
Email: Demetrius.T.Cheeks@uscg.mil

**United States of America**
AUSA Jeffrey Miller
800 North Shoreline Boulevard, Suite 500
Corpus Christi, TX 78401-3716
Tel: (361)888-3111
Fax: (361)888-3200
Email: usatxs.atty@usdoj.gov

**United States Customs and Border Protection Agency**
555 N. Carancahua St. Suite 570
Corpus Christi, TX 78478
Tel: (361) 888-3352
Fax: (361) 888-3358


_____s/ Brian T. McCarthy___