UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| WILMINA SHIPPING AS *et al* | § | |
| | § | |
|     Plaintiffs | § | |
| VS. | § | CIVIL ACTION NO. C-10-137 |
| | § | |
| UNITED STATES OF AMERICA | § | |

## ORDER

On May 17 and May 19, 2010, the Court held hearings in the above-styled action to address the Petition to Fix Security for Release of the Motor Tanker Wilmina and Request for an Expedited Hearing on the Motion (the "Petition"), filed by Petitioners Wilmina Shipping AS, as owner of the M/T Wilmina, and the M/T Wilmina <u>in rem</u> ("Petitioners"), against the United States, United States Coast Guard ("USCG"), and United States Customs and Border Protection ("CBP"). (D.E. 1.)   For the reasons stated herein, this action is DISMISSED for lack of subject matter jurisdiction.

### I.   Factual and Procedural Background

This action was filed on May 14, 2010.  The vessel at issue in this action is the M/T Wilmina (the "Vessel"), an oil tanker.  It is owned by Wilmina Shipping AS, and managed by Wilhelmsen Marine Services AS, both of which are incorporated in Norway. The Vessel is registered in Norway and operates pursuant to Norwegian law. (D.E. 1 at 2-3.) On May 4, 2010, the Vessel arrived at the Port of Corpus Christi, Texas.  During a secondary inspection on May 5, 2010, the USCG claimed to have found that the Vessel violated the International Convention for the Prevention of Pollution from Ships ("MARPOL") in several respects, and issued a Port State Control Report, which detailed alleged malfunctions in the oily water separator aboard the ship, and several associated

record-keeping failures. After finding these deficiencies, the USCG issued a letter stating that the Vessel had been detained through a USCG request to CBP that the Vessel's departure clearance be withheld. The USCG stated that it found a reasonable basis to believe that the Vessel, its owner, or operator may be subject to civil or criminal penalty for violation of the Act to Prevent Pollution from Ships, 33 U.S.C. § 1901 et seq. ("APPS"), the domestic enacting legislation for MARPOL, specifically Section 1908(a).[1] (D.E. 1 at 3-5.)

On May 7, 2010, USCG Lieutenant Demetrius Cheeks submitted to the owner and manager of the Vessel a proposed Security Agreement that they would be required to execute to obtain clearance to depart the Port of Corpus Christi. Petitioners objected to several conditions of release, most notably the provisions requiring the owner to post a $1,500,00 surety bond and requiring the detention of twelve members of the Vessel's twenty-five person crew in the Southern District of Texas for an unspecified and unlimited time period at owner and manager expense. Petitioners submitted a counter-proposal that would have provided for a $500,000 bond and the detention of six crewmembers of a total of ninety days. (D.E. 1 at 6-7.)

The parties negotiated further, but were unable to reach an agreement. Frustrated with a May 13 counter-offer that Petitioners felt was even more restrictive than the initial proposal (in that it required that the 12 detained crew members remain in Corpus Christi, rather than anywhere in the Southern District of Texas), Petitioners brought suit in this Court. Petitioners state that the customs hold has had a significant negative impact, as it

---

[1] Section 1908(a) provides: "A person who knowingly violates the MARPOL Protocol,1 Annex IV to the Antarctic Protocol, this chapter, or the regulations issued thereunder commits a class D felony. In the discretion of the Court, an amount equal to not more than 1/2 of such fine may be paid to the person giving information leading to conviction."

has prevented the Vessel from making a voyage from Mexico to Spain, which would have generated $809,912 in total revenue, and has already caused an additional $242,054 in expenses, plus further costs accruing daily.  The Court held phone conferences in this action on May 17 and May 19, 2010.

After the May 17 phone conference with this Court, Petitioners submitted a counter-offer to the USCG, which contained, inter alia, a $500,000 bond and an agreement to detain six crewmembers at owner expense for a limited period of time, subject to extension by the Court for good cause. (D.E. 9 at 2.)  The USCG rejected this offer and instead submitted a proposed agreement that required a $1,000,000 bond and the unlimited detention of twelve crew members.[2]  (D.E. 9 at 3.)   At the May 19 conference, counsel for Petitioners represented that any potential signature of this Security Agreement would be made under economic duress.

## II.     Discussion

During the phone conferences with the Court, and in their written submission, Respondents argued that this Court lacks subject matter jurisdiction over this action, as the parties are still negotiating their Security Agreement and Petitioners have not exhausted their administrative remedies. (D.E. 5 at 4-10.)   After reviewing the

---

[2] Notably, the May 19 proposed Security Agreement also provides:

> "[i]f Owner and/or Operator have grounds to believe that the investigation or any subsequent proceedings are being unreasonably and significantly delayed, then after notifying the U.S. Coast Guard signatory to this Agreement . . . , and allowing ten (10) business days for a response, may seek judicial review by the U.S. District Court for the Southern District of Texas.  The sole remedy for Owner and/or Operator in any such action shall be the termination of their obligations to pay food and housing costs for ship's officers and crewmember witnesses.  Any such order, like any other court order, may be appealed and will not otherwise be effective for a period of sixty (60) days."

(D.E. 9-1 at 6.) The Court doubts whether such a provision could even be enforceable, to the extent it seeks to limit the effective date of any Court Order.

submissions of both parties and considering oral arguments, the Court must conclude that it lacks subject matter jurisdiction in this action.

Petitioners have failed to provide any statutory basis for jurisdiction at this point in the proceedings.[3] The APPS Statute, Section 1910, provides several avenues for judicial review, but none are applicable here. 33 U.S.C. § 1910(a).[4] Subsection 1910(a)(1) refers to actions against alleged APPS violators; subsection (a)(2) refers to actions against the Secretary of Transportation for failure to perform any action which is "not discretionary," which does not encompass granting of clearances[5]; and subsection (a)(3) refers to actions against the Secretary of the Treasury, who is not a party to this case.[6]

Section 1904(g) provides another potential avenue for challenging a USCG determination. This section states, "[a] person whose ship is subject to a detention order under this section may petition the Secretary, in the manner prescribed by regulation, to

---

[3] Petitioner attempts to assert jurisdiction under 28 U.S.C. § 1333 and § 1346. (D.E. 1 at 2.) Section 1333 is not applicable, as it applies to "any civil case of admiralty or maritime jurisdiction," and "prize cases." Any action here would be a criminal case under 33 U.S.C. § 1908(a). Section 1346 is also not applicable, as it applies to actions against the government for recovery of internal revenue tax, tort suits for damages not exceeding $10,000, and other unrelated causes of action. None of the provisions under Section 1346 give the Court jurisdiction over this action simply because the United States is named as a defendant. 28 U.S.C. § 1346.

[4] Section 1910(a) provides:
>   Except as provided in subsection (b) of this section, any person having an interest which is, or can be, adversely affected, may bring an action on his own behalf--
>       (1) against any person alleged to be in violation of the provisions of this chapter, or regulations issued hereunder;
>       (2) against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under this chapter which is not discretionary with the Secretary;
>       (3) against the Secretary of the Treasury where there is alleged a failure of the Secretary of the Treasury to take action under section 1908(e) of this title.

33 U.S.C. § 1910(a).

[5] Section 1908(e) provides that "[c]learance **may** be granted upon the filing of a bond or other surety satisfactory to the Secretary," and thus clearly grants the Secretary discretion in deciding whether to allow clearance.

[6] In addition, Section 1910(b) contains administrative prerequisites to the filing of suit, which Petitioner has not satisfied. Specifically, Section 1910(b) provides, "[n]o action may be commenced under subsection (a) of this section-- (1) prior to 60 days after the plaintiff has given notice, in writing and under oath, to the alleged violator, the Secretary concerned, and the Attorney General."

review the detention order. Upon receipt of a petition under this subsection, the Secretary shall affirm, modify, or withdraw the detention order within the time prescribed by regulation." 33 U.S.C. § 1904(g). Petitioner has not so far followed these administrative procedures. Even if the Court were to conclude that exhaustion of administrative remedies would be futile, as appears likely in this case, Section 1904(g) does not then provide for a civil cause of action. While Section 1904(h) provides that "[a] ship unreasonably detained or delayed by the Secretary acting under the authority of this chapter is entitled to compensation for any loss or damage suffered thereby," this section only contemplates an action for compensation, not for alteration of the Security Agreement, which is the relief Petitioners seek here. See generally First Business Shipping Corp., as owner of M/V Maria N.M. and the M/V Maria N.M. in rem v. United States of America, No. 6:06-cv-802-Orl-22, DAB (June 14, 2006).

      The Court also lacks jurisdiction under the Supplementary Admiralty Rule E, which states that it "applies to actions in personam with process of maritime attachment and garnishment, actions in rem, and petitory, possessory, and partition actions, supplementing Rules B, C, and D." Fed. R. Civ. P. Adm. Rule E(1). The action at issue here is not an attachment pursuant to a civil action, but rather a withholding of customs clearance under 33 U.S.C. § 1908(e). The USCG is authorized under Section 1908(e) to request that CBP withhold clearance "because the vessel, its owner, operator, or person in charge, is liable for a fine or civil penalty, or reasonable cause exists to believe they may be subject to a fine or civil penalty under the provisions of 33 U.S.C. 1908. . . . Clearance or a permit to proceed may be granted when the port director is informed that a bond or other security satisfactory to the Coast Guard has been filed." 19 C.F.R. §

4.66c(a).  These procedures are specific to the APPS statute, and are not supplemented by civil Admiralty Rules governing actions in rem and quasi in rem.

Finally, while the Administrative Procedures Act ("APA") provides for judicial review of a "final agency action," 5 U.S.C. § 704, there is no such final action here, as the parties remain in negotiations over the Security Agreement at this stage of the proceedings.  Moreover, Petitioners specifically disavow any intent to rely upon the APA to obtain review in this case.  (D.E. 9 at 4 n.15 ("Petitioners do not concede that the [APA] is applicable in the instant matter . . . .").)  APA Section 704 thus cannot serve as a basis for jurisdiction.

In light of this discussion, the Court concludes that it lacks subject matter jurisdiction over this action, and must therefore dismiss this action.

### III.    Conclusion

For the reasons stated above, this Court DISMISSES this action for lack of subject matter jurisdiction.

SIGNED and ORDERED this 19th day of May, 2010.

_____
Janis Graham Jack
United States District Judge